The court will prepare an order consistent with this opinion.

**In re Raymond R. FIFAREK, Debtor.**

**Amy K. Stark, d/b/a Stone Harbor Recoveries, as Assignee of Larkin Group, Inc., a/k/a Larkin Insurance Group, Inc., Successor Plaintiff–Movant,**

v.

**Raymond R. Fifarek, Defendant–Respondent.**

**Bankruptcy No. GT 92–85852. Adversary No. 93–08023.**

United States Bankruptcy Court, W.D. Michigan.

June 20, 2007.

Amy K. Stark, d/b/a Stone Harbor Recoveries, Petoskey, pro se.

Wallace H. Tuttle, Esq., Traverse City, for Raymond R. Fifarek.

## *OPINION REGARDING RENEWAL OF JUDGMENT*

JAMES D. GREGG, Bankruptcy Judge.

### I. *ISSUE*

Should this court issue a new judgment extending its prior judgment which excepted a debt from discharge?

### II. *JURISDICTION*

The court has jurisdiction over the bankruptcy case and all related proceedings. 28 U.S.C. § 1334. The United

States District Court for the Western District of Michigan has referred the bankruptcy case and all related proceedings to this bankruptcy court for decision. 28 U.S.C. § 157(a) and L.R. 83.2(a) (W.D.Mich.). This contested matter is a core proceeding because it pertains to the possible extension of a prior court judgment which resulted in an exception to discharge of a particular debt. 28 U.S.C. § 157(b)(2)(I); *cf. Thickstun Bros. Equip. Co., Inc. v. Encompass Servs. Corp.,* 344 B.R. 515, 522 (6th Cir. BAP 2006) (the bankruptcy court has jurisdiction to interpret and clarify the terms of a confirmed chapter 11 plan).[1]

### III. *FACTS AND PROCEDURAL HISTORY*

On January 23, 1993, Larkin Group, Inc., as Plaintiff, "Larkin," sued Raymond R. Fifarek, Debtor–Defendant, "Debtor," to determine whether a debt was nondischargeable. Dkt. 1. Eventually, on October 24, 1996, this court signed a Consent Judgment of Non–Dischargeability.[2] The judgment was entered on the docket on October 30, 1996. Dkt. 38. The consent judgment determined that the Debtor was

indebted to Larkin in the amount of $120,000 and that the debt was nondischargeable under 11 U.S.C. § 523(a)(4) (breach of fiduciary obligation). Interest was awarded at the rate of 3.38% per annum, "with the accrued interest to commence two years from the date of entry [of the judgment]." Dkt. 38.

After entry of the judgment, during 1998 to 2002, Larkin attempted to collect its nondischargeable debt by conducting a judgment debtor examination, seeking execution, and utilizing garnishment remedies. Dkt. 44–67. Collection activities apparently ceased in September 2002.

On October 18, 2006, Amy K. Stark, d/b/a Stone Harbor Recoveries, "Stark," filed a "Petition to Renew Judgment." Dkt. 68. Attached to the petition was a proposed Order Renewing Judgment. Stark also filed an Acknowledgment and Assignment of Judgment. Dkt. 69. That document purported to assign Larkin's prior bankruptcy court judgment to Stone Harbor Recoveries. After reviewing Stark's filings, the court scheduled the matter for hearing to determine whether

---

1. The Debtor's brief implicitly argues that this court may lack jurisdiction to hear and decide the issue. *See HOC, Inc. v. McAllister (In re McAllister),* 216 B.R. 957 (Bankr.N.D.Ala. 1998). In *McAllister,* the plaintiff filed a writ of garnishment against a garnishee-defendant to collect a judgment it held against the debtor-defendant. The writ was improperly served. However, the court, in a lengthy analysis, stated it lacked personal jurisdiction over the garnishee-defendant because the post-judgment garnishment action was not "related to" the underlying bankruptcy case. This court respectfully disagrees with *McAllister.* Bankruptcy courts have the power and authority to interpret and enforce their judgments and orders. This includes subsequent actions to collect money judgments issued by the court. *Reedy v. Reedy (In re Reedy),* 247 B.R. 742, 746 (Bankr.E.D.Tenn.1999) (Supreme Court decisions, "coupled with Rule 69, persuade[ ] this court that it has ancillary

subject-matter jurisdiction to reach money in order to enforce its judgments."). Also, regardless of whether *McAllister* is correctly decided, it is inapposite. The issue before this court is whether a prior judgment should be *renewed,* not whether the plaintiff may utilize garnishment proceedings to collect the judgment.

2. The judgment was signed by Honorable Jo Ann C. Stevenson who was presiding over cases and adversary proceedings in Traverse City, Michigan. The Traverse City cases, and related proceedings, including this contested matter, have been reassigned to the undersigned judge in accordance with the judges' rotation among the various cities where this court sits. 28 U.S.C. § 154(a) (the bankruptcy judges in this district shall determine rules for the division of its cases).

Stone Harbor Recoveries was a corporate entity or a sole proprietorship. Also, the court desired to fully consider the relief requested inasmuch as it has not previously addressed the procedure to renew or extend its prior judgments.

After notice to Stark and the Debtor, a hearing commenced on November 28, 2006. The hearing was continued on January 26, 2007, and was concluded on March 9, 2007.[3] At the hearing, the court heard three witnesses: Amy K. Stark, Bryan Taggart, and Justin Looyenga. All testified credibly. Five exhibits were admitted into evidence.

During the hearing, Stark testified that Stone Harbor Recoveries is not a corporate entity but rather is Stark's assumed name for conducting her business. Exh. 2. She also testified that the assignment of the judgment was given to her by Larkin. Exh. 1. She stated that Bryan Taggart signed the assignment of judgment on behalf of Larkin and that Taggart was a co-owner of the "company." Tr. II at 8.

Bryan Taggart testified that he signed the assignment of judgment. Exh. 1. Taggart is the vice-president and treasurer of Larkin Insurance Group, Inc. Tr. III at 17. He identified the original Articles of Incorporation for Larkin Group, Inc. Exh. 4.[4] Taggart also identified a Certificate of Amendment to the Articles of Incorporation. Exh. 5. He explained, consistently with Exh. 5, that Larkin Group, Inc. changed its name to Larkin Insurance Group, Inc. Tr. III at 10. Taggart also testified that the Amendment to the Articles of Incorporation was a corporate document maintained in the ordinary course of business and he was one of the custodians of the corporate records. Tr. III at 12–13. The court finds that Larkin Insurance Group, Inc. is the successor in interest to the original plaintiff and judgment creditor, Larkin Group, Inc.

Justin Looyenga testified that he owned fifty percent of the Larkin stock and served as the "acting president." Tr. III at 20. Looyenga and Taggart are each authorized to sign documents on behalf of the corporation. Id. Contrary to the Debtor's argument, the court finds that Taggert signed the assignment from Larkin to Stark in his corporate capacity.

Based upon the testimony of the witnesses and the exhibits admitted into evidence, the court makes the following additional findings: Larkin Group, Inc., the Plaintiff and judgment holder, changed its name to Larkin Insurance Group, Inc. on April 15, 1992. Exh. 5. Bryan Taggart, an officer of Larkin, was authorized to sign the assignment of judgment given to Stark. He executed an Acknowledgment of Assignment of Judgment, Exh. 1, on October 12, 2006, in the Larkin corporate capacity, and gave the assignment of judgment to Stark. Exh. 1. Stark, d/b/a Stone Harbor Recoveries, an assumed name, took action to renew Larkin's judgment which had been assigned to her. The original judgment was entered on the docket on October 30, 1996. Dkt. 38. Her Petition to Renew Judgment was filed with this court on October 18, 2006. Dkt. 68. The petition was filed within ten years after the entry of the Consent Judgment of Nondischargeability in favor of Larkin and against the Debtor.

---

3. When the court refers to the transcript of the hearing, the November 28 proceedings will be referred to as "Tr. I"; the January 26 hearing will be referred to as "Tr. II"; and the March 9 hearing shall be referred to as "Tr. III."

4. The Plaintiff, in the judgment issued by this court, was Larkin Group, Inc.

## IV. *DISCUSSION*

### A. *Stark's Ability to Appear and Be Heard.*

■ Stark filed her Petition to Renew Judgment without an attorney appearing on her behalf. In the caption of the petition, the Plaintiff is listed as "Stone Harbor Recoveries, Assignee of Larkin Insurance Group, Inc." Dkt. 68. Prior to the hearing, the court was uncertain whether Stone Harbor Recoveries was a corporate entity or a sole proprietorship. In Michigan, a corporation may not engage in the practice of law, including appearing before the courts. MICH. COMP. LAWS ANN. § 450.681 (West 2002); *Detroit Bar Ass'n v. Union Guardian Trust Co.*, 282 Mich. 216, 276 N.W. 365, 367 (1937). Likewise, a corporation may not appear in the federal courts except through an attorney. *Doherty v. American Motors Corp.*, 728 F.2d 334, 340 (6th Cir.1984).

■ However, persons operating a business as a sole proprietorship need not be represented by an attorney in federal court proceedings.

> The Supreme Court recently made clear that under [28 U.S.C. § 1654], corporations, partnerships, associations, and any other artificial entities may appear in federal courts only through a licensed attorney. *Rowland v. California Men's Colony*, 506 U.S. 194, 202 n. 5, 113 S.Ct. 716, 721–22 n. 5, 121 L.Ed.2d 656 (1993). A person who is not a licensed attorney and attempts to represent another person or entity in court is engaging in the unauthorized practice of law. *See State ex rel. Stephan v. Williams*, 246 Kan. 681, 793 P.2d 234 (1990). Thus, both case law and a statute prevent this Court from allowing [the individual] to represent Kansas Collection Agency *unless it is his sole proprietorship,* and not a corporation, partnership, or other sep-

arate entity. While there is a constitutional right to represent oneself in court, so far as this Court is aware, there is no such right to represent another person or entity.

> *In re Harrison,* 185 B.R. 607, 610 (Bankr. D.Kan.1995) (emphasis supplied); *see also Rowland v. California Men's Colony,* 506 U.S. 194, 201–02, 113 S.Ct. 716, 721, 121 L.Ed.2d 656 (1993) ("It has been the law for the better part of two centuries, for example, that a corporation may appear in the federal courts only through licensed counsel.") (additional citations omitted).

Because Stark has established that Stone Harbor Recoveries is a sole proprietorship and is her assumed business name, Exh. 2, she may file pleadings, appear, and be heard regarding the issue of whether this court's prior judgment should be renewed.

### B. *Federal Law Regarding Enforcement of Money Judgments.*

There "is no specific federal statute of limitations on how long [a federal] judgment is effective." *Lillie v. Hunt (In re Hunt),* 323 B.R. 665, 666–67 (Bankr. W.D.Tenn.2005). When no federal statute applies, state practices and procedures are utilized. FED. R. BANKR. P. 7069 (incorporating by reference FED. R. CIV. P. 69). The governing rule states in pertinent part:

> Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that

it is applicable. In aid of the judgment or execution, the judgment creditor *or a successor in interest when that interest appears of record,* may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held.

FED. R. CIV. P. 69(a) (emphasis supplied).

■ In this instance, the "district court" is the United States District Court for the Western District of Michigan. This bankruptcy court is a unit of the district court. 28 U.S.C. § 151 ("In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district."). This court is therefore empowered to address and decide whether the judgment may be renewed. 28 U.S.C. § 157(a) ("Each district court may provide that ... any or all proceedings ... related to a case under title 11 shall be referred to the bankruptcy judges for the district."); L.R. 83.2(a)(W.D.Mich.) (referring all title 11 proceedings to this bankruptcy court).

The bankruptcy court is in Michigan. Therefore, Rule 69(a) mandates the practice and procedure of the State of Michigan be utilized to enforce or renew the prior bankruptcy court judgment.

■ Rule 69(a) permits "the judgment creditor or a successor in interest when that interest appears of record" to enforce the federal judgment. Based upon the court's findings, Stark is the successor in interest to Plaintiff Larkin, the former judgment creditor. Her interest "appears of record" because the Acknowledgment and Assignment, Exh. 1, was filed with this court with her Petition to Renew Judgment. Dkt. 68 and 69. Because all requirements of Rule 69(a) have been established, the court turns to state law.

### C. *Michigan Practice and Procedure to Renew Judgments.*

■ "Within the applicable period of limitations, the judgment creditor can bring an action on the judgment or decree for a *new* judgment or decree, which is subject to the same limitations." James D. Gregg, Linda C. Scheuerman & Stephen S. LaPlante, *Enforcing Judgments and Debts,* § 6:19 (2004) (citing MICH. COMP. LAWS ANN. § 600.5809(3)) (emphasis in original).

Michigan's Revised Judicature Act of 1961 sets forth the provisions governing renewal of judgments. The applicable statutory subsections state:

Sec. 5809. (1) *A person shall not bring or maintain an action to enforce a noncontractual money obligation unless,* after the claim first accrued to the person or to someone through whom he or she claims, *the person commences the action within the applicable period of time prescribed by this section.*

. . . .

(3) Except as provided in subsection (4), the *period of limitations is 10 years for an action founded upon a judgment or decree rendered* in a court of record of this state, or *in a court of record of the United States* or of another state of the United States, *from the time of the rendition of the judgment or decree.... Within the applicable period of limitations prescribed by this subsection, an action may be brought upon the judgment or decree for a new judgment or decree.* The new judgment or decree is subject to this subsection.

. . . .

MICH. COMP. LAWS ANN. § 600.5809 (West 2000) (emphasis supplied).

1. *"Person" With Standing.*

█ In his brief, the Debtor asserts that Stark is not a "person" with standing to renew the judgment under state law. The court rejects this argument.

Based upon the findings of fact, Larkin Group, Inc., after it procured the original judgment, changed its name to Larkin Insurance Group, Inc. The successor corporation then transferred its bankruptcy court judgment to Stark. It is of no importance that the assignment was to "Stone Harbor Recoveries" because that is Stark's assumed business name.

Stark is therefore a "person" with standing within the Michigan renewal of judgment statute. MICH. COMP. LAWS ANN. § 600.5809(1). She may renew the prior judgment.

2. *"Rendition" of Original Judgment.*

█ The time limit to renew a judgment rendered by the State of Michigan or a Michigan federal court is ten years. MICH. COMP. LAWS ANN. § 600.5809(3). The limit is measured from the time the judgment is rendered. *Id.* When was the bankruptcy court's original judgment "rendered?"

The Sixth Circuit Court of Appeals addressed this issue in *Atlantic Richfield Co. v. Monarch Leasing Co.*, 84 F.3d 204 (6th Cir.1996). In *Atlantic Richfield,* the district court orally granted the plaintiff's motion for summary judgment on June 4, 1984. On June 25, 1984, the district court entered its written order on the docket granting summary judgment, which also itemized the damages and set forth the attorney's fees awarded. On June 22, 1994, more than ten years after the oral pronouncement but less than ten years after the entry of the written order, the

plaintiff judgment creditor filed suit to extend the judgment. The defendant judgment debtor argued that the suit was untimely.

The district court stated that federal court judgments must be "set forth on a separate document" pursuant to Federal Rule of Civil Procedure 58. *Atlantic Richfield,* 84 F.3d at 206. Therefore, the district court reasoned that "[a] federal court judgment does not exist until it is put in writing." *Id.* The district court determined that the judgment was not "rendered" until reduced to writing; therefore, the plaintiff requested extension of the judgment within the Michigan ten-year statute of limitations. *Id.*

The defendant appealed; it asserted the rendition of judgment occurred when the oral decision was announced. Rejecting the argument on appeal, the Sixth Circuit held that "under federal procedural law, a federal court judgment is 'rendered' only when it is set forth in writing on a separate, discrete document and entered on the civil docket." *Atlantic Richfield,* 84 F.3d at 207.[5] The holding by the Sixth Circuit in *Atlantic Richfield* is consistent with the doctrine that a court speaks through its orders and not by oral statements. *Atlantic Richfield,* 84 F.3d at 208–09 (noting that although some decisions are confusing, the weight of authority in Michigan is that courts "render" their judgments when they are written and not when a judge makes an oral statement in open court); *cf. Volvo Commercial Fin. LLC v. Gasel Transp. Lines, Inc. (In re Gasel Transp. Lines, Inc.),* 326 B.R. 683, 694 (6th Cir. BAP 2005) (concurring opinion) (noting that a federal court speaks only through its orders). In this adversary proceeding, the bankruptcy court "spoke" on October

---

**5.** In dicta, the Sixth Circuit opined that the result would be the same under Michigan law. Forum shopping would therefore not be an issue.

30, 1996 when the Consent Judgment of Non–Dischargeability was entered on the docket after submission and signing of the judgment. Dkt. 38.

### 3. *"Action" to Extend the Judgment Period.*

■ Before the ten-year time limitation to enforce a judgment expires, "an *action* may be brought upon the judgment or decree for a new judgment or decree." MICH. COMP. LAWS ANN. § 600.5809(3) (emphasis added). What "action" is required to extend a judgment?

The Michigan Court of Appeals has addressed this issue. *VanReken v. Darden, Neef & Heitsch,* 259 Mich.App. 454, 674 N.W.2d 731 (2003). In *VanReken,* a judgment following a jury trial was entered on March 7, 1991. An amended final judgment was entered on July 29, 1991. On February 28, 2001, within the statutorily mandated ten-year limitations period, the plaintiff filed an ex parte motion to extend the judgment. The Oakland County Circuit Court granted the motion and extended the judgment for an additional ten years. Later, on June 27, 2001, the plaintiff filed a complaint to extend the same judgment. Therefore, the subsequent complaint was filed more than ten years after the original judgment but less than ten years after the amended judgment.

In *VanReken,* the state circuit court granted the plaintiff's motion for summary disposition on the complaint and again extended the judgment. However, upon reconsideration, the circuit court reversed course and determined that the March 7, 1991 original judgment was a final judgment; extension of that judgment was time barred because the complaint to renew was filed outside the ten-year statute of limitations.

On appeal, the Michigan Court of Appeals determined that the ex parte motion to modify the judgment was procedurally sufficient and constituted an "action" under MICH. COMP. LAWS ANN. § 600.5809(3). *VanReken,* 259 Mich.App. at 458, 674 N.W.2d 731. The court stated:

> Taking the plain meaning of the phrase "an action," we find that in MCL 600.5809(3) the Legislature clearly intended actions beyond just civil complaints to extend or renew a judgment. See [*Federated Publications, Inc. v. City of Lansing,* 467 Mich. 98, 107, 649 N.W.2d 383 (2002); *Pohutski v. City of Allen Park,* 465 Mich. 675, 683, 641 N.W.2d 219 (2002) ]. The phrase "an action" is broader than the phrase "civil action," which reveals the Legislature's intent to allow actions beyond a civil complaint to extend a judgment pursuant to MCL 600.5809(3). Once the intention of the Legislature is discovered, it must prevail regardless of any conflicting rule of statutory construction. *Green Oak Twp. v. Munzel,* 255 Mich. App. 235, 240, 661 N.W.2d 243 (2003). Thus, the remaining question is whether plaintiff's ex parte motion constitutes "an action" for purposes of MCL 600.5809(3). *We find that plaintiff's ex parte motion, as an ex parte action, constitutes an action sufficient to extend the judgment.*

*VanReken,* 259 Mich.App. at 460, 674 N.W.2d 731 (emphasis supplied).

Because the ex parte motion was filed within the applicable time limitations, the Court of Appeals concluded that the motion was sufficient to renew the judgment. *VanReken,* 259 Mich.App. at 461, 674 N.W.2d 731.

In this proceeding, Stark filed a Petition to Renew Judgment. This is tantamount to a motion and the contents of the petition are legally and procedurally sufficient to request that the original judgment be ex-

tended. *In re Gasel Transp., Lines, Inc.,* 326 B.R. at 693 (a court is not bound how a party labels the request for relief; the relief sought is governed by the substance of the pleading).

■ This is not to say that the extension of the judgment must be requested by a motion. A complaint, or some other type of "action" filed with the court, may suffice. *See, e.g., Atlantic Richfield,* 84 F.3d at 205 (the requested extension of the judgment was initiated by a lawsuit).

In this proceeding, the court gave notice to the Debtor, who contested the requested extension. Having had the opportunity to review the applicable statute and rules, this court recognizes that it could have granted Stark's motion on an ex parte basis. If that had occurred, notice would have been given to the Debtor after the judgment was extended. The Debtor would then be afforded an opportunity to contest the extension or set aside the renewal of the judgment. For example, a judgment debtor might seek to set aside the renewed judgment under FED. R. BANKR. P. 9024 (which incorporates FED. R. CIV. P. 60(b) and sets forth various grounds for relief from judgment or order including that the judgment is void). In this proceeding, the Debtor has had the opportunity to object to the requested judgment extension and his due process rights have not been undermined or ignored.[6]

## V. *CONCLUSION*

■ Stark, as assignee of the prior bankruptcy court judgment, properly requested an extension of the nondischargeable debt judgment within the ten-year

---

6. Other potential issues may exist which need not be decided now. Is the renewed judgment "rendered" when it is entered on the docket or does the rendition of the renewed judgment relate back to when Stark's Petition to Renew was filed? What is the remaining

limitations period mandated by the governing Michigan statutes. Over the Debtor's objection, and based upon this court's findings of fact and conclusions of law, Stark's requested relief is warranted. A separate judgment shall be signed and entered accordingly.

amount owed on the prior judgment which shall remain collectible under the renewed judgment? These issues, and others, may be considered by the court should they arise in the future.