# STATE OF MICHIGAN

# COURT OF APPEALS

RAINBOW CONSTRUCTION, INC.,

        Plaintiff/Counter-Defendant-
Appellant,

v

TOWNSHIP OF HOWELL,

        Defendant/Counter-Plaintiff-
Appellee.

UNPUBLISHED
November 14, 2017

Nos. 332621; 333336; 335140;
335142
Livingston Circuit Court
LC No. 12-026975-CK

Before: M. J. KELLY, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

These consolidated appeals arise from a construction contract dispute between defendant, the Township of Howell, and plaintiff, Rainbow Construction, Inc., who was awarded a contract to extend sewer services and install drain culverts and related structures. Rainbow Construction appeals by right, challenging a number of the trial court's orders. For the reasons set forth in this opinion, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. MOTION FOR RECONSIDERATION

## A. STANDARD OF REVIEW

Howell filed three motions for summary disposition. The second motion was denied in an oral order, but no written order was entered. Thereafter, after the case was assigned to a successor judge, the successor judge indicated that she would entertain a motion for reconsideration on the issues raised in the second motion for summary disposition. On appeal, Rainbow Construction raises a number of challenges to that decision. We review a trial court's decision on a motion for reconsideration for an abuse of discretion. *Kokx v Bylenga*, 241 Mich App 655, 658-659; 617 NW2d 368 (2000). The interpretation of court rules is reviewed de novo. *Staff v Johnson*, 242 Mich App 521, 527; 619 NW2d 57 (2000).

## B. ANALYSIS

Rainbow Construction first argues that under MCR 2.613(B) the successor judge was prohibited from hearing the motion for reconsideration. MCR 2.613(B) provides:

> A judgment or order may be set aside or vacated, and a proceeding under a judgment or order may be stayed, only by the judge who entered the judgment or order, unless that judge is absent or unable to act. If the judge who entered the judgment or order is absent or unable to act, an order vacating or setting aside the judgment or order or staying proceedings under the judgment or order may be entered by a judge otherwise empowered to rule in the matter.

Here, as explained by the successor judge, the former judge no longer heard civil cases for administrative reasons. On appeal, Rainbow Construction does not dispute the judge's stated reasons for why the former judge could not hear the motion for reconsideration, nor does it suggest that there is any procedural irregularity with regard to the successor judge taking over the case. Furthermore, a successor judge generally enjoys all the prerogatives of the original judge. See *Harry v Fairlane Club Props, Ltd*, 126 Mich App 122, 124; 337 NW2d 2 (1983). That is especially true in cases where the original judge did not enter a written order, which is what happened here. See *Mikedis Perfection Heat Treating Co*, 180 Mich App 189, 204 n 4; 446 NW2d 648 (1989) (stating that because "[n]either final judgment nor an order of remand appears to have ever been entered here, . . . [the successor judge] was empowered to reverse that interlocutory order without regard to the time elapsed, simply on the basis of a preference for a more correct adjudication of the rights and liabilities of the litigants"). Accordingly, we conclude that MCR 2.613(B) did not prohibit the successor judge from ruling on the motion for reconsideration.[1]

Next, Rainbow Construction argues that that the motion for reconsideration could not be granted because the requirements of MCR 2.119(F)(3) were not satisfied. MCR 2.119(F)(3) provides:

> Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error.

Rainbow Construction suggests that in this case, because Howell's motion for reconsideration just presented the same issues ruled on by the original judge, the motion for reconsideration had to be denied. However, MCR 2.119(F)(3) does not prohibit a trial court from granting a motion

---

[1] We note that, contrary to Rainbow Construction's assertions on appeal, there is no evidence that Howell was judge shopping. Rather, the reassignment of judges was for administrative reasons, which, presumably, are out of the control of the litigants in this case.

that "merely presents the same issues ruled on by the court," rather, "[a]s a general matter, courts are permitted to revisit issues they previously decided, even if presented with a motion for reconsideration that offers nothing new to the court." *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 521; 892 NW2d 467 (2016) (quotation marks and citations omitted). Therefore, the "denial of a motion for summary disposition does not preclude such a motion on the same ground from being granted later in the same case." *Id*. at 521-522.

Finally, Rainbow Construction argues that the motion for reconsideration was untimely, so it should not have been considered. MRC 2.119(F)(1) provides that, generally, a motion for reconsideration "must be served and filed not later than 21 days after entry of an order deciding the motion." Here, given that no order was entered denying the second motion for summary disposition, the 21-day limit imposed by the court rule had not yet started to run. Rainbow Construction asserts that even though a court generally "speaks through its written orders, not its oral statements," *People v Turner*, 181 Mich App 680, 683; 449 NW2d 680 (1989), under some circumstances an "oral ruling has the same force and effect as a written order," *McClure v HK Porter Co*, 174 Mich App 499, 503; 436 NW2d 677 (1988). Nevertheless, given that the language of the court rule requires that an order be entered, and given that no order was entered in this case, we conclude that the motion for reconsideration was timely under MCR 2.119(F)(1).[2]

For the foregoing reasons, the trial court did not abuse its discretion—or exceed its authority—by granting Howell's motion for reconsideration.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Rainbow Construction next argues that the trial court erred by granting Howell summary disposition on reconsideration of Howell's second summary disposition motion. This Court reviews a trial court's decision on a motion for summary disposition de novo. *Ardt v Titan Ins Co*, 233 Mich App 685, 688; 593 NW2d 215 (1999). "A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone." *Smith v*

---

[2] Rainbow Construction also asserts that, although MCR 2.116(E)(3) permits a party to file more than one motion for summary disposition, MCR 2.116(F) requires that the motion be filed in good faith. MCR 2.116(F) provides that "[a] party or an attorney found by the court to have filed a motion or an affidavit in violation of the provisions of MCR 2.114 may, in addition to the imposition of other penalties prescribed by that rule, be found guilty of contempt." Here, Rainbow Construction has not provided any facts or legal authority suggesting that Howell violated the provisions in MCR 2.114, and we are at a loss for how the filing of an additional motion for summary disposition could be considered to have been in bad faith. Further, given that a fourth motion for summary disposition (repeating the issues of the second motion) was not actually filed and that a motion for reconsideration of the second motion was what was decided by the trial court, we are not even sure that MCR 2.116(E)(3) applies. We do recognize that MCR 2.114 applies to all motions, which would include the motion for reconsideration; however, again, Rainbow Construction does not assert that MCR 2.114 was violated.

*Stolberg*, 231 Mich App 256, 258; 586 NW2d 103 (1998). This Court accepts as true all factual allegations in the claim "to determine whether the claim is so clearly unenforceable as a matter of law that no factual development could establish the claim and justify recovery." *Id.* A motion for summary disposition under MCR 2.116(C)(10) tests the evidentiary support for a claim. When reviewing a decision under MCR 2.116(C)(10), this Court examines all documentary evidence in the light most favorable to the nonmoving party to determine whether there exists a genuine issue of material fact. *Ardt*, 233 Mich App at 688.

## B. ANALYSIS

At issue is whether Howell failed in its duty to disclose information pertinent to the construction project, and whether the exculpatory clauses in the contract wholly relieved Howell of responsibility for any undisclosed information. " '[T]he direction to contractors to visit the site and inform themselves of the actual conditions of a proposed undertaking, will not relieve from defects in the plans and specifications . . . .' " *Hersey Gravel Co v State Highway Dep't*, 305 Mich 333, 341; 9 NW2d 567 (1943), quoting *United States v Atlantic Dredging Co*, 253 US 1, 11; 40 S Ct 423; 64 L Ed 735 (1920). In *Hersey*, the contractor claimed that the Highway Department failed to disclose information it had regarding soil conditions at the construction site that was more detailed than the information provided in the blueprints that it released to those bidding on a highway project. *Hersey*, 305 Mich at 335-336. Our Supreme Court held that the contractor was entitled to rely on the Highway Department's representations in the blueprints regarding the nature of the soil conditions, and that the Department had an obligation to make a full disclosure of the results of tests of soil conditions at the site. *Id.* at 340-341.

*Hersey*, through its citation of *Atlantic Dredging*, referred to the seminal case, *United States v Spearin*, 248 US 132, 136; 39 S Ct 59; 63 L Ed 166 (1918), in which the United States Supreme Court recited the general rule that "one who undertakes to erect a structure upon a particular site, assumes ordinarily the risk of subsidence of the soil," but also the exception that "if the contractor is bound to build according to plans and specifications prepared by the owner, the contractor will not be responsible for the consequences of defects in the plans and specifications." The Court further stated that the "responsibility of the owner is not overcome by the usual clauses requiring builders to visit the site, to check the plans, and to inform themselves of the requirements of the work . . . ." *Id.*

In *W H Knapp Co v State Highway Dep't*, 311 Mich 186; 18 NW2d 421 (1945), our Supreme Court affirmed a judgment in favor of a contractor who claimed compensation for additional work in the construction of highway grading and drainage structures occasioned by the Highway Department's engineers having understated the difficulties that the subsoil conditions would impose, despite contract provisions requiring bidders to examine the specifications and the worksite to determine for themselves what the conditions would be, and disclaiming the bidders' right to rely on the soil notations provided. *Id.* at 187-188, 202. In *Valentini v City of Adrian*, 347 Mich 530, 534; 79 NW2d 885 (1956), our Supreme Court reiterated that "[t]he withholding by the city of its knowledge of the known conditions, resulting in excessive cost of construction, forms an actionable basis for plaintiff's claim for damages." In that case, the contractor for a sewer project claimed that the defendant municipality knew that quicksand and excessive water were present in the construction areas, but failed to disclose that information during the bidding process, causing the contractor to underbid the project then

discover problematic soil conditions that caused delays and cost overruns. *Id*. at 531. The Supreme Court held that because the municipality's engineers had knowledge of unfavorable subsoil conditions that were not disclosed to the contractor, the latter was entitled to recover damages for delays and cost overruns even though the parties' contract required the bidder to conduct his own examination and to assume full responsibility for drawing conclusions from subsoil samples the defendant offered. *Id*. at 533-534. Finally, in *Earl L Reamer Co v Swartz Creek*, 76 Mich App 227, 235; 256 NW2d 447 (1977), this Court held that a sewer contractor was entitled to judgment where employees of the contracting municipality "possessed material information regarding underground structures, which information was not given to the plaintiff before it bid on the project," and thus that the municipality "failed in its duty to disclose knowledge which it presently possessed through information known to its officials or agents."

In sum, *Hersey*, *Spearin*, and related cases endeavor to prevent the cynical or advantageously negligent municipalities from withholding of information relating to project conditions for the purposes of securing a bid that does not take those conditions into account. Those cases require that a party soliciting bids to disclose pertinent information in hand; they do not, however, require the party to acquire additional information. The caselaw therefore allows for the contractual allocation in construction projects of the risk of unexpected conditions in general while preventing abuse of that prerogative. This comports with the general principles recognizing the freedom to contract, see *Port Huron Ed Ass'n v Port Huron Area Sch Dist*, 452 Mich 309, 319; 550 NW2d 228 (1996), and also the principal that contracts normally include the expectation of good faith and fair dealing, see *Hammond v United of Oakland, Inc*, 193 Mich App 146, 151-152; 483 NW2d 652 (1992).

In this case, the trial court repeatedly asked Rainbow Construction's lawyer to specify what information Howell actually had, but failed to disclose, and the lawyer repeatedly responded by speaking of things Howell ostensibly should have known or taken it upon itself to discover. When the court asked, "[I]f they didn't know about it, what obligation did they have to put it in?" Rainbow Construction's lawyer did not assert that Howell had some actual knowledge it failed to disclose, but instead replied as follows:

> [T]he law is that their specifications are a representation that . . . the documents that we have are adequate to the task of building the job. If when we start working we find ourselves encountering conflicts under the ground that aren't shown on the plans, the plans are not adequate to the task. And so the . . . implied warranty of plans and specifications has been breached.

The discussion between the court and Rainbow Construction's lawyer continued as follows:

> *THE COURT*: Okay, then you tell me the thing that the Township . . . knew and didn't tell you.
>
> *[RAINBOW CONSTRUCTION'S LAWYER]*: They knew that there were . . . additional conflicts beneath the surface that they didn't disclose.
>
> *THE COURT*: Okay and which ones were those?

-5-

*[RAINBOW CONSTRUCTION'S LAWYER]:* All the ones that we encountered that weren't shown on the map.

*THE COURT:* Okay. And how do you, what proof do you have that they knew that? Give me the facts.

*[RAINBOW CONSTRUCTION'S LAWYER]:* The fact that we, well no. I'm telling you that . . . their investigation was inadequate because they didn't find or didn't disclose all things that were there to be found and disclosed.

*THE COURT:* But they did not know them.

*[RAINBOW CONSTRUCTION'S LAWYER]:* They know that . . . there's an investigation to be made that would—

*THE COURT:* Okay. What would their investigation have been, sir?

*[RAINBOW CONSTRUCTION'S LAWYER]:* Their investigation would have been to go to each utility and to look at the plans and drawings at the utility to determine where the utility said that was the location of all of the underground utilities.

Rainbow Construction's position, then, was not that Howell withheld any information it actually had and was required to share. Instead, it argued that Howell knew, or should have known, that the information it had and provided was not sufficient for bidders to rely on, and that Howell was liable for failing to supplement the information it possessed to ensure that the plans and specifications were a reliable measure of what the job would require. Rainbow Construction thus was urging an extension of *Spearin* and related authority, which at present only disallows a resort to exculpatory contract language to shield a municipality from responsibility for withholding from bidders information about the costs and burdens of the project that it *actually* has.

Rainbow Construction continues this reasoning on appeal, asserting that Howell was under an "implied warranty of the adequacy of drawings and specifications," which was "not limited by what [Howell's engineer] may not know and may not have included in the drawings and text, if having knowledge of a subject is necessary to the adequacy of the plans and specifications." As such, Rainbow Construction charges Howell with responsibility for its engineer's failure to identify some of the underground utility structures that Rainbow Construction would encounter. Rainbow Construction asserts that under this implied warranty, "[t]he owner, and its engineer, must discover the information necessary to produce drawings and specifications adequate to the task; lack of knowledge is not a defense." However, the only authority plaintiff cites for these assertions is *Hersey*, which is distinguishable because it involved a misstatement of the conditions actually existing and did not involve the failure to discover and disclose additional information.

-6-

Rainbow Construction also charges Howell with responsibility for it encountering some unexpected interference from the local road commission. Rainbow Construction complains that disagreements or misunderstandings "between [Howell] and the road commission . . . had taken an inordinate period of time to resolve, causing the schedule to be extended, as well as increas[ing] the . . . cost," but cites no authority for the proposition that Howell failed to discharge a duty to discover and disclose the road commission's policies as they would bear on the progress of the construction project, or that the township otherwise had some contractual duty greater than Rainbow Construction's duty to make such inquiry or otherwise anticipate changed policies.

Rainbow Construction also argues that by granting partial summary disposition, the trial court "split the cause of action," which improperly brings the preclusion doctrines to bear. Rainbow Construction's explains this argument as follows:

> A judgment on a split claim less than all claims that is favorable to [Rainbow Construction] will merge all remaining claims in the judgment. A judgment on a split claim less than all claims that is unfavorable to [Rainbow Construction] will bar all remaining claims. Thus, splitting the cause of action for trial will moot the issues on appeal, and a motion to dismiss the appeal by [Howell] will be expected as soon as a judgment is reached on the claim that it to be tried.

Rainbow Construction's reasoning in this regard is difficult to follow. It is axiomatic that, on occasion, several claims in a complaint may be dismissed by stipulation or summary disposition whereas other claims raised in the same complaint may proceed to trial. Such routine procedure does not result in distinct causes of action subject to preclusion under the doctrine of res judicata, nor does it result in the remaining issues in the case being precluded by operation of collateral estoppel. The trial court did not, therefore, err by granting summary disposition in Howell's favor on several of the claims raised in Rainbow Construction's complaint.[3]

---

[3] Rainbow Construction also argues that the trial court did not decide all of the issues in the proceedings below. In particular, it contends that the trial court failed to resolve its claim for liquidated damages and Howell's counterclaim. We disagree. The order granting summary disposition states the "motion for reconsideration and summary disposition is granted except for the sole issue of [Rainbow Construction's] claim for payment for excess sand backfill, which will be reserved for trial." At trial, that sole issue left for trial—the excess sand backfill issue— was dismissed following a motion for directed verdict. Further, when Rainbow Construction brought up the issue of allegedly unresolved claims, the trial court's statements indicate that the issues had, in fact, been resolved with the grant of partial summary disposition. Accordingly, given that the court's orders clearly resolve all claims, Rainbow Construction's argument that some claims were unresolved is without merit.

## III. JUDICIAL BIAS

### A. STANDARD OF REVIEW

Rainbow Construction argues that the successor judge was biased against it, which resulted in a denial of due process. Whether judicial misconduct denied a party a fair trial presents a constitutional question subject to review de novo. *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015).

### B. ANALYSIS

A trial judge must act as a neutral and detached judicial officer. See *Cain v Dep't of Corrections*, 451 Mich 470, 509; 548 NW2d 210 (1996). When evaluating a claim of judicial bias, the appellate court must consider the totality of the circumstances to determine whether "the judge demonstrated the appearance of advocacy or partiality on the whole." *Stevens*, 498 Mich at 172.

> [T]he reviewing court should inquire into a variety of factors, including the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. . . . Reviewing courts may consider additional factors if they are relevant to the determination of partiality in a particular case. . . . The reviewing court must consider the relevance and weigh the significance of each factor under the totality of the circumstances of the case. [*Id.*]

"A trial judge is presumed to be impartial and the party who asserts partiality has a heavy burden of overcoming that presumption." *In re MKK*, 286 Mich App 546, 566; 781 NW2d 132 (2009). "Opinions formed by a judge on the basis of facts introduced or events occurring during the course of the current proceedings, or of prior proceedings, do not constitute bias or partiality unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Schellenberg v Rochester, Mich, Lodge No 2225*, 228 Mich App 20, 39; 577 NW2d 163 (1998). Further, "[r]epeated rulings against a litigant, no matter how erroneous, and how vigorously and consistently expressed, are not disqualifying." *Wayne Co Prosecutor v Parole Bd*, 210 Mich App 148, 155; 532 NW2d 899 (1995) (quotation marks and citation omitted).

Rainbow Construction alleges bias is evidence based on several instances in the proceedings before the successor judge. We address each in turn. First, Rainbow Construction points out that the judge spoke of her background in municipal law. In context, however, it appears that the judge was being conversational. Next, Rainbow Construction contends that the judge often interrupted its lawyer, and once demanded from its lawyer a "yes or no" answer to a question. However, although the record reflects such interruptions, it is axiomatic that interruptions of the sort evident in the record are often normal manifestations of the dynamics of oral argument, not a display of bias. Rainbow Construction also asserts that the judge showed some confusion concerning earlier rulings in the case, but does not explain how such confusion is indicative of bias. Rainbow Construction next complains that the judge expressed some

disapproval over Rainbow Construction's decision to submit a reply brief without first seeking the court's permission to do so. However, adherence to procedural rules does not indicate bias. See *People v Kean*, 204 Mich App 533, 537; 516 NW2d 128 (1994).

In addition, Rainbow Construction points out that the judge showed little deference to the predecessor judge's earlier comments in connection with Howell's second motion for summary disposition, but as discussed earlier, the successor judge was entitled to decide that motion on reconsideration. We conclude that her expression of "dismay" at the challenge to her being permitted to do what the court rules plainly allow her to do does not show that she was biased against Rainbow Construction.

Rainbow Construction also states that the judge accused its lawyer of yelling at her in one instance, but does not explain why this suggests bias. Nor are we prepared to discern bias from the judge's expressions of disagreement with Rainbow Construction concerning certain caselaw. See *Wayne Co Prosecutor*, 210 Mich App at 154. Rainbow Construction points out that the judge sua sponte declared its amended complaint frivolous, but such action is within a judge's broad discretion in the conduct of court proceedings. See MCR 2.114(E).

Finally, Rainbow Construction asserts that the judge sua sponte conducted an "adversarial creditor's examination" when she insisted that Rainbow Construction's president take the stand and answer questions concerning Rainbow Construction's finances, but even though that action was not a commendable procedure, we conclude that it reflects an overzealous desire for progress in the case rather than judicial bias. Further, we see no bias in the judge's decision to "interfere" with Rainbow Construction's efforts to post an appeal bond given that the judge was apparently concerned that the amounts offered fell short of what was required.

For these reasons, we conclude that Rainbow Construction has failed to overcome the strong presumption of judicial impartiality.

## IV. FRIVOLOUS COMPLAINT

### A. STANDARD OF REVIEW

Rainbow Construction argues that the trial court erred in declaring its amended complaint frivolous and imposing sanctions in the matter. "A trial court's finding that an action is frivolous is reviewed for clear error." *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW2d 245 (2002).

### B. ANALYSIS

A claim is frivolous if "(1) the party's primary purpose was to harass, embarrass, or injure the prevailing party, or (2) the party had no reasonable basis upon which to believe the underlying facts were true, or (3) the party's position was devoid of arguable legal merit." *Cvengros v Farm Bureau Ins Co*, 216 Mich App 261, 266-267; 548 NW2d 698 (1996). MCR 2.114(D)(2) states that the signature of an attorney or party on a document submitted to a court certifies that, to the best of the signer's understanding after reasonable inquiry, "the document is well grounded in fact and is warranted by existing law or a good-faith argument of the extension, modification, or reversal of existing law . . . ."

After granting Howell's motion for a directed verdict on the sole issue that proceeded to trial, the trial court sua sponte suggested that Rainbow Construction's claim against Howell was frivolous. The court explained:

> Well, there really is no conflicting evidence. I did have a motion for summary disposition. And on all of the counts, claims, except this one, I didn't grant a motion for summary disposition. The argument then was in part that, the [Rainbow Construction] was blaming everything on [Howell], the engineer for the plans; the drawings; and, in part, on . . . not working with the Road Commission and, . . . once I've heard everything, . . . there's nothing in why the Road Commission was even blamed for anything. The . . . entire case as put forth to me in argument, I didn't get any facts that supported that argument. . . . [I]f they would have come back with a verdict for the [Rainbow Construction], I would have done a judgment notwithstanding the verdict. I mean, after listening to everything, I'm convinced this claim was frivolous. . . . [Howell]has identified and presented carefully the relevant testimony and the evidence in support of their position. And as [Rainbow Construction] explained and agreed, there were two ways under which they could get paid. And they acknowledged that doing the math as outlined in [the parties' contract] they weren't entitled to payment.
>
> * * *
>
> . . . It was sand. And . . . it was acknowledged that quantities can change. . . . And the [Rainbow Construction] signed off. Testimony was really clear. He signed off on all of them. . . . Now, there were times when the engineer knew that more money was coming and it was paid. And so the contracts, it's all, it's complete. The work was complete in 2006, I think. And no claims made, signed off on everything. . . . I can only assume that [Rainbow Construction] or somebody looked at the paperwork and thought hmm, we just didn't make enough; somehow, we . . . got to get some more money in. . . . It's really a shame that summary disposition wasn't granted years ago. . . . There is no viable claim. And on top of it, it was frivolous. . . . And . . . the thing is that the defendant are the tax payers. Their money has been wasted. I can't even imagine how much has been wasted. I'm going to leave it up to the defense counsel if they want to ask for attorney fees. I won't do it sua sponte. Under frivolous, though, it goes against both the attorney and the party. It's mandatory. I can't just pick one. . . .

Subsequently, following a motion hearing, the trial court found that Rainbow Construction's complaint was frivolous because it lacked legal merit.[4]

---

[4] In addition to arguing that Rainbow Construction's complaint was frivolous for lack of legal merit, Howell argues that it was frivolous on the ground that Rainbow Construction failed reasonably to investigate the factual bases for its claims. At the motion hearing, the trial court asked Rainbow Construction's lawyer, "how could you ever say that you made a reasonable . . .

Rainbow Construction's complaint, however, was not devoid of *arguable* legal merit. Rainbow Construction maintained that Howell, as a municipality soliciting construction bids, was operating under an "implied warranty of the adequacy of drawings and specifications," which was not limited by what Howell's engineer may not know and may not have included in the drawings and text, but instead extended to making further inquiry or otherwise discovering additional information, despite contractually obligating bidders to take measures to satisfy themselves concerning the actual conditions underlying the project. That position either required a creative interpretation of *Spearin* and related caselaw or it called for the extension or modification of the pertinent rules as they stood. Accordingly, Rainbow Construction's argument—although unsuccessful—was based on a good-faith argument in favor of extending *Spearin* and its progeny to cover the present circumstances. The trial court clearly erred by finding Rainbow Construction's entire cause of action frivolous.

## V. FRIVOLOUS OBJECTIONS TO GARNISHMENT

Rainbow Construction's last issue arises from the trial court's September 13, 2016 orders (1) rejecting Rainbow Construction's objections to garnishment and requiring the immediate release of withheld funds and (2) awarding Howell $1,365 in additional sanctions on the ground that the objections to garnishment were frivolous. Here, the sole question raised in connection with this issue is "Did the lower court properly award sanctions in accord with accepted standards." This Court need not address issues not set forth in the statement of questions presented. *Marx v Dep't of Commerce*, 220 Mich App 66, 81; 558 NW2d 460 (1996); MCR 7.212(C)(5). The only award of sanctions embodied in the two September 13, 2016 orders underlying the appeal presenting this issue was the one ordering plaintiff to pay $1,365 to Howell for having filed frivolous objections to garnishment.

In objecting to garnishment, Rainbow Construction first argued that the trial court lacked jurisdiction to conduct a "creditor's examination." The factual basis for this objection arises from the trial court's decision to swear in and question Rainbow Construction's president during a May 17, 2016 motion hearing. Rainbow Construction's president was merely present in the courtroom as a spectator. The court questioned him about Rainbow Construction's financial condition as a corporation that was winding down its operations. Thereafter, the court ordered that Rainbow Construction's corporate bank account be frozen in order to satisfy the payment of sanctions that had yet to be ordered. Regardless of the appropriateness of the court's actions, MCR 3.101(K)(1) provides that objections to garnishment "may only be based on defects in or the invalidity of the garnishment proceeding itself, and may not be used to challenge the validity of the judgment previously entered." Further, MCR 3.101(K)(2) states that objections to garnishment "shall be based on one or more of the following," and sets forth six criteria, which implicate neither how the court obtained the debtor's financial information, nor the timing of an

investigation into the facts?" However, the court noted that the facts were not really in dispute and that the real issue was that Rainbow Construction was arguing inapplicable law. Given that the court did not otherwise express concern over any failure to investigate the factual bases for the claims, we conclude that trial court in fact declared the cause of action frivolous on the basis of a lack of legal support for the claims.

order limiting access to the fund in question. Therefore, the court's "creditor's examination" was not a valid objection to the garnishment.

Nevertheless, MCR 3.101(K)(2)(f) sets forth as a basis for objecting to garnishment that "the garnishment was not properly issued or is otherwise invalid." Rainbow Construction included with its objections to garnishment the following constitutional argument:

> Because of the inflexible rules governing stays of proceedings pending appeal, [Rainbow Construction] is liable for more than the value of its assets, and what assets it has, although frozen and not available to [Rainbow Construction] are subject to seizure through garnishment and exhaustion in the hands of the judgment creditor. [Howell's] legal grip on [Rainbow Construction's] assets, its rights in the asset fund, is tenuous at best. Reversal on appeal will restore [Rainbow Construction's] fortunes, subject to the additional burden of costs to pursue [Howell] if the defendant has disbursed the fund. There is no rational basis for a procedure such as this.
>
> * * *
>
> The statutes and rules simply order the judgment debtor to invest in bonds, letters of credit, commissions, fees, and premiums and burden it with unnecessary additional debt. Lacking resources for a stay bond, it is [Rainbow Construction's] privilege to observe [Howell] making off with its remaining assets. There are no alternatives or options allowed, although alternatives surely exist. These added financial burdens make [Rainbow Construction's] right of appeal illusory.

Rainbow Construction additionally referred to "the rational relationship test of substantive due process," and stated that "Michigan has an interest in protecting both judgment creditors and judgment debtors while judgment debtors prosecute their appeals." With this argument, Rainbow Construction attacked not the original sanctions award underlying the garnishment, but rather the validity of the garnishment proceeding itself in broad constitutional terms. Without deciding the merits of the constitutional argument—which has not been raised on appeal—we nevertheless conclude that this argument is, at the least, "a legitimate plea for an "extension, modification, or reversal of existing law." Therefore, this objection to the garnishment was not frivolous for purposes of MCR 2.114(D)(2). Because the trial court erred in finding Rainbow Construction's position frivolous, we again conclude that the court erred in awarding attendant sanctions.[5]

---

[5] Rainbow Construction also asserts that the trial court improperly interfered with its efforts to post an appeal bond, and that Howell recovered the funds subject to garnishment in violation of the 21-day automatic stay on execution of judgments, see MCR 2.614(A), but these arguments concern enforcement of sanctions orders, not the propriety of the award of sanctions which is the issue raised on appeal.

## VI. CONCLUSION

For the reasons stated, we reverse the trial court's findings that Rainbow Construction made frivolous filings and vacate the attendant awards of sanctions,[6] but otherwise affirm the results below.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra

---

[6] The stipulated order awarding Howell attorney fees and costs included case evaluation sanctions under MCR 2.403(O) of "$79,998.50 in attorney fees and $453.50 in costs." Because Rainbow Construction has not challenged that part of the award, our determination that no sanctions should have been awarded over frivolous pleading does not render moot issues relating to how Howell will collect fees and costs awarded as case evaluation sanctions.